1  GENNADY L. LEBEDEV, ESQ. (SBN: 179945)
2  Email: Gennady@LMHLawyers.com
   ETHAN O. MICHAEL, ESQ. (SBN: 221666)
3  Email: Ethan@LMHLawyers.com
4  LEBEDEV, MICHAEL & HELMI
   10999 Riverside Drive, Ste. 201
5  Studio City, California 91602
6  Telephone: (818) 757-7677
   Facsimile: (818) 757-7047
7

8  Attorneys for Plaintiff,
   911 Restoration Franchise, Inc.
9

10                   **UNITED STATES DISTRICT COURT**

11                   **CENTRAL DISTRICT OF CALIFORNIA**

12

13  911 RESTORATION FRANCHISE,          | **Case No. 2:15-cv-00629-R-SH**
    INC., a California corporation,
14                Plaintiff,             | **PLAINTIFF'S NOTICE OF**
                                         | **MOTION AND MOTION FOR**
15  vs.                                  | **ENTRY OF FINAL DEFAULT**
                                         | **JUDGMENT AGAINST**
16                                       | **DEFENDANTS; MEMORANDUM**
17  GARY BLAKENEY, an individual, dba    | **OF POINTS AND AUTHORITIES**
    911 RESTORATION OF CLEVELAND,
18  OH and dba RESTORATION 911 and dba   |
    911 RESTORATION OF COLUMBUS          | Date:        9/21/2015
19  OHIO; 911 RESTORATION OF             | Time:        10:00 a.m.
20  CLEVELAND OHIO, INC., an Ohio        | Crtrm:       8
    corporation; and DOES 1 to 10, inclusive,
21                                       |
22                Defendants.            | [Filed concurrently with Declaration of
                                         | Gennady L. Lebedev; Request for
23                                       | Judicial Notice and (Proposed)
24                                       | Judgment]

25

26

27

28

                                  1

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 21, 2015 at 10:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 8 of the United States District Court, located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable Manuel Real, United States District Court Judge presiding, Plaintiff 911 RESTORATION FRANCHISE, INC. ("Plaintiff") will and hereby does move against each of the Defendants, GARY BLAKENEY, an individual doing business as 911 Restoration of Cleveland, OH doing business as Restoration 911 doing business as 911 Restoration of Columbus Ohio; and 911 RESTORATION OF CLEVELAND OH, INC., an Ohio corporation (collectively, the "Defendants"), jointly and severally, for: (A) Default Judgment pursuant to Rule 55(b)(2) of the Federal *Rules of Civil Procedure*; (B) a Permanent Injunction, pursuant to Section 1116 of the Lanham Act (15 U.S.C. §1116(a)) and Federal *Rules of Civil Procedure* 65; (C) actual damages; (D) treble damages under 15 U.S.C. §1117(b); (E) attorney's fees under 15 U.S.C. §1117(b) and based upon contract; (F) costs; (G) prejudgment interest; and (H) such other relief as the court considers just and proper.

This motion is made on the grounds that:

1.     Each of the Defendants has been served with a Summons and Complaint in this action but has failed to file a response;

2.     Defendants' entry of default was entered on July 10, 2015;

3.     None of the Defendants is a minor or incompetent, and is not in military service (so that the Soldiers and Sailors' Civil Relief Act of 1940 does not apply);

4.     Notice of the amount requested by Plaintiffs in judgment has been made to Defendant concurrently with the filing of this motion;

1

2            5.    Default judgment in favor of Plaintiffs and against Defendant is

3       justified in light of the substantive merits of Plaintiffs' claims, the sufficiency of

4       Plaintiffs' Complaint, the amount of money at stake in this action, the possibility of

5       prejudice to Plaintiffs if relief is denied, the lack of possibility of dispute as to any

6       material facts in the case, and the fact that Defendants' default did not result from

        excusable neglect.

7            This motion is based upon this notice of motion and motion, the entry of

8       default and supporting declaration of Gennady L. Lebedev, and the Request for

9       Judicial Notice filed concurrently herewith, all pleadings and papers on file in this

10      action, and such other and further evidence and oral argument as the Court may

11      consider in connection with ruling upon this motion.

12      Dated:  August 5, 2015                       Respectfully submitted,

13                                         LEBEDEV, MICHAEL & HELMI

14                                     By:    /s/ Gennady L. Lebedev   .

15                                        Gennady L. Lebedev

16                                        Attorneys for Plaintiff

17                                        911 RESTROATION

18                                        FRANCHISE, INC.

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION..................................................................................1

II.    STATEMENT OF FACTS.....................................................................4

III.   LEGAL ARGUMENT............................................................................11

       A.     Judgment by Default Should be entered Against Defendant.............11

              1.    There is Ample Evidence to Support the Substantive Merits
                    of Plaintiffs' Well-Plead Claims for Trademark
                    Infringement...........................................................................13

              2.    Plaintiffs Would be Prejudiced if a Default Judgment
                    is Not Entered………………………………………........14

              3.    Amount of Damages Sought......................................................15

              4.    There is No Possibility of a dispute Concerning the
                    Material Facts...........................................................................17

              5.    Default is Not Due to Defendants' Excusable Neglect.............17

              6.    There is a Strong Policy Favoring Decisions on
                    the Merits.................................................................................18

       D.     Plaintiffs are Entitled to a Permanent Injunction................................18

IV.    CONCLUSION...................................................................................... 19

i

1

# <u>TABLE OF AUTHORITIES</u>

2

3

## <u>Federal Cases</u>

4

Alan Neuman Prods., Inc.v Albright,
862 F.2d 1388 (9th Cir. 1988).................................................................12

5

6

Benny v Pipes,
799 F.2d 489 (9th Cir. 1986) amended on other grounds,
807 F.2d 1514 (9th Cir. 1987).................................................................12

7

8

Brookfield Communications, Inc., v. West Coast Entertainment, Corp.,
174 F.3d 1036, 1047 (9th Cir. 1999)…………………………..……………14

9

10

11

Chrysler Credit Corp. V Macino,
710 F.2d 363 (7th Cir. 1983).................................................................12

12

13

Dundee Cement Co. V Howard Pipe & Concrete Prods., Inc.,
722 F.2d 1319 (7th Cir. 1983).................................................................12

14

15

Eitel v McCool,
782 F.2d 1470 (9th Cir. 1986)....................................12, 14, 17, 18

16

17

Electra Entm't Group, Inc. v Crawford,
226 F.R.D. 388 (C.D. Cal. 2005)..................................................14

18

19

Franchise Holding II, LLC. v Huntington Restaurants Group, Inc.,
375 F.3d 922 (9th Cir. 2004).................................................................12

20

21

Greyhound Exhibitgroup, Inc. v E.L.U.L. Realty Corp.,
973 F.2d 155 (2d Cir. 1992).................................................................12

22

23

Jackson v Sturkie,
255 F. Supp. 2d 1096 (N.D. Cal. 2003)...........................................19

24

25

McKenzie v Wakulla County,
89 F.R.D. 444 (N.D. fla. 1981).................................................................12

26

27

Pepsico, Inc. v. California Security Cans,
238 F. Supp. 2d 1172 (C.D. Cal. 2002)...................................13, 18

28

ii

Philip Morris USA, Inc. v. Castworld Prods., Inc.,
    219 F.R.D 494 (C.D Cal. 2003).....................................................12, 13, 14, 17

TeleVideo Syst., Inc. v. Heidenthal,
    826 F. 2d 915 (9th Cir. 1987)........................................................................12

Warner Bros. Entm't, Inc. v. Caridi,
    346 F. Supp. 2d 1068 (C.D. Cal. 2004)........................................................18

**Federal Statutes**

Fed R. Civ. P. 12…......................................................................................................4

Fed R. Civ. P. 55............................................................................................................3

Fed R. Civ. P. 65 ............................................................................................................3

15 U.S.C. §1114…..............................................................…......................................13

15 U.S.C. §1116............................................................................................................3, 18

15 U.S.C. §1117…........................................................................................3, 4, 16

**Other Authorities**

California Group Practice Guide : Federal Civil Procedure Before Trial
    (Rutter Group 2007) ¶ 6:102 ........................................................................11

California Group Practice Guide : Federal Civil Procedure Before Trial
    (Rutter Group 2007) ¶ 6:92…........................................................................12

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

On January 27, 2015 , Plaintiff filed its Complaint against Defendants, GARY BLAKENEY, an individual doing business as 911 Restoration of Cleveland, OH doing business as Restoration 911 doing business as 911 Restoration of Columbus Ohio; and 911 RESTORATION OF CLEVELAND OH, INC., an Ohio corporation [Doc. 1]. The defendant's name, "911 Restoration of Cleveland OH, Inc." was written in error, in that the correct name for that entity is "911 Restoration of Cleveland Ohio, Inc." This error was corrected by the filing of the first amended complaint on April 8, 2015. [Doc. 12]. The defendants, Gary Blakeney and 911 Restoration of Cleveland Ohio, Inc. are sometimes collectively referred to herein as the "Defendants."

The underlying action states claims against the Defendants for Trademark Infringement and False Designation of Origin under the Lanham Act, 15 U.S.C. 1114(1) and 1125(a), as well as Injunctive Relief, Breach of Written Contracts, Specific Performance and Accounting.

Plaintiff properly served Defendant, Gary Blakeney with summons and complaint on March 16, 2015. [*See*, Request for Judicial Notice ("RJN"), Exh. "B" (Doc. 10)]. Thereafter, Plaintiff served Gary Blakeney with the Amended Summons on First Amended Complaint and First Amended Complaint on April 15,

1

2015.  [*See*, RJN, Exh. "D" (Doc. 18)].  Plaintiff also properly served Defendant, 911 Restoration of Cleveland Ohio, Inc., with the Amended Summons on the First Amended Complaint and the First Amended Complaint on April 22, 2015. [*See*, RJN, Exh. "C" (Doc. 17)].

On June 22, 2015 the Court entered a Preliminary Injunction in which it found that:

1.  Plaintiff is likely to succeed on its trademark infringement claims;

2.  Plaintiff here has a registered trademark on 911 Restoration.  That is prima facie evidence of the ability of the mark and the claimant's exclusive right to use it;

3.  Plaintiff has also sufficiently demonstrated likelihood of confusion, and it has proffered evidence on various materials, including signs, displays, printed materials, advertising and marketing materials.

[*See*, RJN, Exh. "F" (Doc. 22, 4:14-21)].

Furthermore, the Court found that Plaintiff is also likely to succeed on the merits of its claims seeking Defendants' specific performance of certain post-default or post-termination rights under the franchise agreements, because those duties include cessation of use of Plaintiff's mark so as to diminish likelihood of confusion and dilution of Plaintiff's goodwill. [RJN, Exh. "F" (Doc. 22, 4:22-23)]. The Court also found that the threat of injury is of damage to Plaintiff's goodwill due to Plaintiff's inability to oversee and control Defendants' work and customer

2

service.  [RJN, Exh. "F" (Doc. 22, 5:1-3)].

Accordingly, the Court has already found that irreparable harm has been shown and the balance of the hardships favors granting injunctive relief, as Plaintiff is likely to suffer injury to its goodwill, but Defendants are not faced with any risk save being halted from continuing to benefit from Plaintiff's mark recognition. [RJN, Exh. "F" (Doc. 22, 5:9-14)].

Finally, the Court has found that public interest favors granting relief because there is a strong public interest in preventing customer confusion and fraud.  The Court explained that likelihood of confusion is high here, especially when the franchisee once had authorization to use the mark, which he has subsequently lost but continues to use the mark.  [RJN, Exh. "F" (Doc. 22, 5:14-20)].

None of the Defendants have yet filed any responsive pleadings to either the Complaint or First Amended Complaint or otherwise moved with respect to requesting an extension of time.  Each of the Defendants is therefore in default.  As such, Plaintiff respectfully moves for: (A) Default Judgment pursuant to Rule 55(b)(2) of the Federal *Rules of Civil Procedure*; (B) a Permanent Injunction, pursuant to Section 1116 of the Lanham Act (15 U.S.C. §1116(a)) and Federal *Rules of Civil Procedure* 65; (C) actual damages; (D) treble damages under 15 U.S.C. §1117(b); (E) attorney's fees under 15 U.S.C. §1117(b) and based upon contract; (F) costs; (G) prejudgment interest; and (H) such other relief as the court considers just and proper.

3

This motion should be granted in its entirety. First, as this Court has already found, Plaintiff is likely to prevail on the substantive merits of its infringement claims.  Second, the factors used to determine whether to grant a motion for default judgment are in Plaintiffs favor in this case. The evidence submitted in this case demonstrates that Defendants engaged in the unauthorized use of Plaintiff's marks and marks that are substantially similar thereto and which create likelihood of confusion.  There is no question that Defendants are liable for federal trademark infringement.

Further, Defendants' actions are clearly intentional, as they continue to engage in such infringement, even after having been served with this underlying lawsuit, which also makes this an exceptional case wherein Plaintiff is entitled to recover treble damages and attorney's fees under 15 U.S.C. §1117(b).

As such Plaintiff is entitled to actual damages, statutory damages, attorney's fees, costs, and interest for Defendants' willful and egregious conduct. The clerk has entered a default against each of the Defendants, which have all failed to answer, enter an appearance, or otherwise respond to the action within the time period allowed under Rule 12(a) of the Federal Rule of Civil Procedure.

## II.

## <u>STATEMENT OF FACTS</u>

911 RESTORATION is a California Corporation which owns and franchises emergency clean-up and remediation services under several trade

4

names, including "911 RESTORATION", "911 RESTORATION BUSINESS",

"911 RESTORATION FRANCHISE, INC.," which are registered with the United

States Patent and Trademark Office ("Marks").  [RJN, Exh. "A" (Shpizear Decl.),

Doc. 9-1:  ¶¶19, 20 and 21, p.7, ln.24–p.8, ln.17; Exh. 7: pp. 168-169; Exh. 8:

pp.171-172; Exh. 9: pp. 174-175)].

Plaintiff, as the result of expenditure of time, skill, effort and money, has

developed and owns a unique, proprietary and evolving system ("System") for,

among other things, providing and marketing of emergency cleanup services from

fire damage, water damage and mold damage, as well as providing molding

inspections, carpet cleaning, duct cleaning and crawl space cleaning under the

Marks.  The System is identified by certain trade names, service marks,

trademarks, logos, emblems and indicia of origin, including the mark "911

Restoration".  Plaintiff has expended considerable time, effort and expense to

acquire knowledge and experience in the business of marketing its services to the

general public and commercial enterprises under such Marks.  [RJN, Exh. "A"

(Doc. 9-1: ¶2, p. 2)].

The System is operated according to certain confidential and proprietary

procedures which include Plaintiff's customer lists, methods of doing business,

methods of providing emergency cleanup services, a distinctive trade name and

logo, proprietary seminar formats, equipment requirements, copyrighted advertising

campaigns and materials, uniforms and other items used in operating procedures

and certain business techniques, including procedures and instructions set forth in Plaintiff's operations and procedures manual, proprietary software, financial data, instructional materials and training programs, research and development, product and service development plans, trade secrets and intellectual property.  [RJN, Exh. "A" (Doc. 9-1: ¶3, p.2)].

With 35 years of experience and a proven track record of success, Plaintiff considers itself to be the most expedient and affordable water-damage company in the industry.  Plaintiff also provides mold removal services which is often needed along with water damage restoration, as mold tends to grow when excess moisture is present in hidden, hard-to-reach areas of properties.  Plaintiff provides fire and smoke damage restoration to remove ash, oily soot and acidic smoke.  Plaintiff's sewage backup services extract black and gray water with ease in the aftermath of a toilet overflow or messy pipe burst.  All of Plaintiff's employees are hand selected based on experience, knowledge, and dedication to customer service.  Every member of Plaintiff's water damage crew is licensed, insured and bonded.  Plaintiff's franchise System is in-part designed to insure compliance with these requirements for Plaintiff's franchisees and their employees, as well.  [RJN, Exh. "A" (Doc. 9-1: ¶4, pp.2-3)].

Plaintiff's specialized services are the core foundation and main draw card of Plaintiff's business identity, the main source of its revenue, and the main component of its marketing program.  The cornerstone of Plaintiff's business model has been

6

built on its unique and proprietary method of operations and marketing.  [RJN, Exh. "A" (Doc. 9-1, ¶5, p.3)].

Plaintiff has expended significant effort and financial resources in advertising, promoting, and developing its business model and the Marks associated with its services throughout the country.  As a result of such advertising and expenditures, Plaintiff has established considerable goodwill in its products and the Marks, the Plaintiff's franchise system and its cleanup services have become widely known and recognized as a symbol of the highest quality, and are an invaluable assets of substantial and inestimable worth to Plaintiff.  [RJN, Exh. "A" (Doc. 9-1: ¶6, pp.3-4)].

The development of the Plaintiff's brand and the customer's identification of Plaintiff's unique concept has been the most critical component of the business.  If the customer is unable to identify Plaintiff's services through its unique concepts, Plaintiff's franchise system will not likely survive.  [RJN, Exh. "A" (Doc. 9-1: ¶7, p.4)].

On or about August 28, 2012, Plaintiff entered into a Franchise Agreement ("Cleveland Franchise Agreement") with Defendants, Gary Blakeney and 911 Restoration of Cleveland, Ohio, Inc. ("911 Cleveland"), which granted such Defendants the right to operate a 911 Restoration franchise in the counties of Cuyahoga, Medina and Lorain in the State of Ohio.  [RJN, Exh. "A" (Doc. 9-1: ¶8, p.4; pp.25, 84-85 (Exh. 1 to Shpizear Decl))].  On or about September 13, 2012,

7

Defendant Blakeney, not only entered into the agreement as the franchisor in his own name, but also signed a Personal Guaranty.  [RJN, Exh. "A" (Doc. 9-1: pp.25, 84-85).

On or about September 24, 2013, Plaintiff entered into another Franchise Agreement ("Columbus Franchise Agreement") with Defendants, which granted Defendants the right to operate a 911 Restoration franchise in the County of Franklin in the State of Ohio.  [RJN, Exh. "A" (Doc. 9-1: ¶10, pp.4-5; pp.95, 152-153 (Exh. 2 to Shpizear Decl.))].   (The Cleveland Franchise Agreement and Columbus Franchise Agreement shall be referred to collectively hereinafter as the "Franchise Agreements").  Not only has Defendant Blakeney entered into the Columbus Franchise Agreement in his own name, he also signed a Personal Guaranty.  (RJN, Exh. "A" (Doc. 9-1, pp. 95, 152-153).

Under the terms of these Franchise Agreements, Defendants were given a license to, among other things, use Plaintiff Marks, as well as benefit from Plaintiff's favorable goodwill in consideration for which Defendants agreed, among other things, to pay Plaintiff franchise fees, service fees, commissions, royalties, fees for uniforms and supplies, to repay an equipment loan and to make monthly payments towards a Google AdWords repayment plan.

The Franchise Agreements provide, in part, that upon termination or expiration of these franchises:

… the Franchisee shall forthwith discontinue to use the Trademarks,

8

Know How, Copyrights and Manual, and the Franchisee will not thereafter operate or do business under any name or in any manner that might tend to give the general public the impression that it is in any manner affiliated with the Franchisor or a "911 Restoration" business, or any business similar thereof, and the Franchisee shall not thereafter use, in any manner, or for any purpose, directly or indirectly, any of Franchisor's confidential information, knowledge or Know How concerning the operation, products, services, trade secrets, procedures, policies, techniques or materials or customers acquired by the Franchisee by virtue of the relationship established by this Agreement…

[RJN, Exh. "A" (Doc. 9-1: ¶30, pp.14-15; p.60 (Article 17.1) p.131 (Article 17.1))].

Thus, a material term of the Franchise Agreements is that, in the event of either parties' termination of the Agreements, the Defendants must cease operating the franchise businesses and shall not represent to the public or hold themselves out as a present or former franchisee of the Plaintiff. (*Id.*).

The Franchise Agreements also provide that Defendants must cease from using any telephone number listed in any telephone directory under the name "'911 Restoration' or any similar designation or directory listing which relates to the Franchised Business." [RJN, Exh. "A" (Doc. 9-1: p.61 (¶17.1.5); p.131 (¶17.1.5))]. Further, upon termination of the Franchise Agreements, Defendants "shall have no further right, title or interest in the Telephone Numbers and Listings, or the URLs…" [RJN, Exh. "A" (Doc. 9-1: p.83; p.150)]. Therefore, Defendants are also bound to transfer any such telephone numbers and website URLs to Plaintiff.

Finally, part of Defendants' post-termination obligations is for two (2) years after termination "and in case of any violation of this covenant, for two (2) years

9

after the violation ceases), either directly or indirectly, for itself, or through on

behalf of, or in conjunction with any person, persons, partnership, or corporation,

own, maintain advise, help, invest in, make loans to, be employed by, engage in, or

have any interest in any business specializing, in whole or in part, in the activities

conducted by the Franchisee in the key areas of emergency response clean-up

services and mold remediation…" within a 50 mile radius of Defendants'

franchised territories.  [RJN, Exh. "A" (Doc. 9-1: pp. 52-53 (¶14.2); pp. 122-

123(¶14.2); p.62 (¶17.8); p.132 (¶17.8))].  As such, Defendants may not continue

operating their current enterprise, as it is in direct violation of Defendants'

agreement to discontinue such businesses for 2 years after termination of the

Franchise Agreements.

Beginning on or before July 2014, Defendants breached both Franchise

Agreements by failing to make necessary payments of franchise fees, service fees,

commissions, royalties, fees for uniforms and supplies and to repay an equipment

loan. [RJN, Exh. "A" (Doc. 9-1, ¶13, pp.5-6)].

Despite the fact Plaintiff has given Defendants notices of default and

termination of the Franchise Agreements, Defendants have failed and refused to

comply with their post-termination franchise obligations to cease operations and

hold themselves out to the public as a business affiliated with Plaintiff or Plaintiff's

franchise business.  [RJN, Exh. "A" (Doc. 9-1: ¶¶14-17, pp.6-7; pp. 156, 158, 160-

162 & 164-166 (Exh. 3-6 of Shpizear Decl.))].  Instead, Defendants have continued

10

to operate their businesses, while continuing to use Plaintiff's trademarks, logos, and names that are the same or substantially similar to Plaintiff's.  [RJN, Exh. "A" (Doc. 9-1: ¶¶23-25, pp.9-10; ¶30, pp.14-16; pp. 177, 179-180, 182, 184, 186 (Exh. 10-14 of Shpizear Decl.))].

Defendants' actions or inactions have deprived and seriously jeopardized Plaintiff's post-termination right to protect and preserve the goodwill of its System and Marks.  [RJN, Exh. "A" (Doc. 9-1: ¶31, p.16)].  Plaintiff's System and Marks are the core components to its brand and customer identification with the System and Marks that are not authorized will destroy Plaintiff's established goodwill with the public.  .  [RJN, Exh. "A" (Doc. 9-1: ¶32, pp.16-17)].    This conduct completely destroys Plaintiff's foundational core value and threatens the existence of the Plaintiff's franchise system.  (*Id.*).

### III.

### <u>LEGAL ARGUMENT</u>

### A.    <u>Judgment by Default Should be Entered Against Defendant</u>

"As a practical matter, default judgments are more often granted than denied." William Schwarzer, et. al., California Group Practice Guide: *Federal Civil Procedure Before Trial*, line 6:102, at 6-27 (Rutter Group 2007) [hereinafter Federal Civil Procedure Before Trial]. Such judgments are proper where defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered. *See Franchise*

*Holding II, LLC. v. Huntington Restaurants Group, Inc.,* 375 F.3d 922, 926 (9th Cir. 2004); *Alan Neuman Prods., Inc. v. Albright,* 826 F.2d 1388, 1392 (9th Cir.1988); *Chrysler Credit Corp. v. Macino,* 710 F.2d 363, 367 (7th Cir. 1983); *McKenzie v. Wakulla County,* 89 F.R.D. 444, 445-46 (N.D. Fla. 1981).

"Ordinarily, the default itself establishes the defendant's liability." *Federal Civil Procedure Before Trial* line 6:92, 6-23. Moreover, on default, "well-pleaded allegations are taken as admitted." *Benny v. Pipes,* 799 F.2d 489, 495 (9th Cir. 1986), amended on other grounds, 807 F.2d 915, 917-918 (9th Cir, 1987). *See also Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7ᵗʰ Cir. C983); *TeleVideo Syst., Inc. v. Heidenthal,* 823 F.2d 915, 917-18 (9th Cir. 1987)."If proximate cause is properly alleged in the complaint, it is admitted upon default." *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003). The fact of injury is thus established and Plaintiffs need only prove that the "compensation sought relates to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir. 1992).

In determining whether to grant a default judgment, the Court should consider a number of factors, including (a) the substantive merits of Plaintiff's claims, (b) the sufficiency of the complaint, (c) the amount of money at stake, (d) the possibility of prejudice to Plaintiffs if relief if is denied, (e) the possibility of dispute as to any material facts in the case, and (f) whether the default resulted from

12

excusable neglect. *Eitel v. McCool,* 782 F.2d 1470, 1471-1472 (9th Cir. 1986). In the present case, as discussed below in detail, all of these criteria direct a finding in favor or the Plaintiffs.

### 1.   There Is Ample Evidence To Support The Substantive Merits Of Plaintiffs' Well-Plead Claims For Trademark Infringement

Under *Eitel*, the merits of Plaintiff's substantive claims and the sufficiency of the pleading to which default was entered are commonly analyzed together. *Pepsico, Inc. v. California Security Cans,* 238 F.Supp. 2d 1172, 1175-76 (C.D. Cal. 2002); *Philip Morris,* 219 F.R.D. at 499-500. These "two Eitel factors require that a plaintiff state a claim which the (plaintiff) may recover." *Philip Morris,* 219 F.R.D. at 499.

In this case, Plaintiff has plead its case of trademark infringement against Defendants. To prevail on its claims, Plaintiff need only establish that (1) Plaintiff owns a valid, protectable trademark, and (2) Defendants used the trademark or a mark similar to the trademark without Plaintiff's consent in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods or services. 15 U.S.C. §1114(1). Plaintiff's Complaint contains the requisite allegations for trademark infringement.

As noted above and in Mr. Shpizear's declaration, Plaintiff owns the trademark for 911 Restoration, which Defendants have infringed. Defendants' failure to respond and defend constitutes an admission these statements are true.

13

*Electra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 398, 392 (C.D.Cal 2005) ("After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.").  In addition, Plaintiff's trademark registration with the U.S. Patent and Trademark Office "constitutes prima facie evidence of the validity of the registered mark *and* of the claimant's exclusive right to use the mark on the goods and services specified in the registration […]". *Brookfield Communications, Inc., v. West Coast Entertainment, Corp.,* 174 F.3d 1036, 1047 (9th Cir. 1999).

Defendants have violated Plaintiff's exclusive trademark rights. Plaintiff's allegations of trademark infringement are deemed true as the result of Defendants' failure to appear and defend in this action. *Electra Entm't*, 226 F.R.D. at 392.

## 2. **Plaintiffs Would Be Prejudiced if A Default Judgment Is Not Entered**

Another *Eitel* factor is the possibility that Plaintiff would be prejudiced if a Default Judgment is not entered.  *Eitel*, 782 F.2d at 1471-72.  In this case, Plaintiff "would be denied the right to judicial resolution of the claims" presented in this action.  By choosing to default in this action rather than appear and defend, Defendants have "deemed to have admitted the truth of Plaintiffs' averments" and established that Plaintiff would "likely suffer great prejudice" if a Default Judgment is not entered.  *Philip Morris*, 219 F.R.D. at 499.  As such, this factor weighs in favor of Plaintiff.

PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

**3.    Amount of Monetary Damages Sought**

Plaintiff seeks damages for Defendants breach and default of the Franchise Agreements in failing to make timely payments required by such agreements as follows:

Under the Cleveland Franchise Agreement, Defendants owe the following sums:

|   |   |   |
|---|---|---|
| a. | Franchise Fees: | $ 21,460.00 |
| b. | Service Fees: | $      520.00 |
| c. | Equipment Loans: | $   9,788.00 |
| d. | Commissions: | $  21,642.83 |
| e. | Liquidated Damages: | $331,500.00 |
|   | TOTAL: | $384,910.83 |

[RJN, Exh. "A" (Doc. 9-1, ¶18, p.7)].

Under the Columbus Franchise Agreement, Defendants owe the following sums:

|   |   |   |
|---|---|---|
| a. | Franchise Fees: | $ 22,500.00 |
| b. | Service Fees: | $      260.00 |
| c. | Loan Repayment: | $   3,804.80 |
| d. | Liquidated Damages: | $110,522.00 |
|   | TOTAL: | $137,086.80 |

[RJN, Exh. "A" (Doc. 9-1, ¶19, pp.7-8)].

15

Additionally, Plaintiff seeks the trebling of such damages under 17 U.S.C. §1117(b), for violation of Section 1114 for Defendants' intentionally using the 911 Restoration mark or designation in connection with the sale, offering for sale or distribution of goods or services.  Under 17 U.S.C. §1117(b), Plaintiff also seeks prejudgment interest from the date of Plaintiff's notices of termination of the subject franchise agreements of October 3, 2014, through entry of judgment, as well as reasonable attorney's fees incurred in connection with this matter.  Therefore, Plaintiff requests that judgment be entered in the following amounts:

- Cleveland Franchise Agreement:     $ 384,910.83

  Prejudgment Interest at 10%:        **$   32,270.76[1]**

  Treble Damages:                     **$1,154,732.40**

- Columbus Franchise Agreement:      $ 137,086.80

  Prejudgment Interest at 10%:        **$   11,493.36[2]**

  Treble Damages:                     **$ 411,260.40**

- Attorney's Fees:                    **$   15,263.50**

- Costs/Filing Fee:                   **$        400.00**

---

[1] Interest calculated by taking 10% of total owed ($384,910.83), which is equal to annual interest of $38,491.00.  That result is divided by 365 days in a year, which amounts to $105.46 daily interest rate.  That result is multiplied by 306 days in between the October 3, 2014 and the date this motion is submitted, August 5, 2015.

[2] Interest calculated by taking 10% of total owed ($137,086.80), which is equal to annual interest of $13,708.68.  That result is divided by 365 days in a year, which

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

(Lebedev Decl., ¶¶12-17, pp. 5-6)].

**4.    There is No Possibility of a Dispute Concerning the Material Facts**

A defendant's failure to respond to a complaint indicates that the "likelihood that any genuine issue may exist is, at best, remote." *Phillip Morris*, 219 F.R.D. at 500.  In this case, Defendants were notified of Plaintiffs' claims of trademark infringement through a cease and desist letter and were properly served with Plaintiff's complaint and first amended complaint, as well as the notice of entry of preliminary injunction.  Defendants failed to respond to either Plaintiffs' demand letter or pleadings.  [Lebedev Decl., ¶¶ 3-8]. As such, the likelihood of any genuine issue is nil as Defendants decided not to defend themselves in this action.

**5.    Default is Not Due to Defendants' Excusable Neglect**

Another *Eitel* factor is whether default was due to excusable neglect.  Here, Defendant, Gary Blakeney, was served with summons and complaint on March 16, 2015  [RJN, Exh. "B" (Doc. 10)].  Thereafter, Plaintiff served Gary Blakeney with the Amended Summons on First Amended Complaint and First Amended Complaint on April 15, 2015.  [RJN, Exh. "D" (Doc. 18)].  Plaintiff also properly served Defendant, 911 Restoration of Cleveland Ohio, Inc., with the Amended Summons on the First Amended Complaint and the First Amended Complaint on April 22, 2015. [RJN, Exh. "C" (Doc. 17)].

---

amounts to $37.56 daily interest rate.  That result is multiplied by 306 days in between the October 3, 2014 and the date this motion is submitted, August 5, 2015.

17

Default was entered in July 10, 2015. [Doc. 25]. About 4 months have elapsed since Defendants received notice of this action, and about 1 month has passed since default and preliminary injunction have issued. Defendants have failed to respond or otherwise defend this action. [Lebedev Decl. ¶¶ 3-8]. Under the circumstances, Defendants' conduct cannot be attributed to excusable neglect. *See, Warner Bros. Entm't, Inc v Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004). Thus, this factor weighs in favor of granting default judgment.

### 6.    There is a Strong Policy Favoring Decisions on the Merits

The final *Eitel* factor is the policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. Defendants' decision not to defend this action "makes a decision on the merits impractical, if not impossible." *Pepsico, Inc.*, 238 F. Supp 2d at 1177. In conclusion, Plaintiffs have fully satisfied the balance of the *Eitel* factors. This Court, therefore, should find that Defendants are liable to Plaintiffs for trademark infringement, and a default judgment should be entered against each of them.

### D.    Plaintiff Is Entitled To a Permanent Injunction

This Court should enjoin each of the Defendants from continuing to infringe Plaintiff's trademark pursuant to 15 U.S.C. §1116(a). The Lanham Act enables a court to grant injunctive relief to prevent the violation of any right of the registrant of a mark registered with the Patent and Trademark Office. Presently, the threat of continued infringement is evident in light of the strong market for Plaintiffs' mark

18

and the contemptuous conduct exhibited by Defendants in this action.  Injunctive relief should therefore be granted, given Defendants' default.  *See, e.g. Jackson v Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ([D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.").  Defendants should be permanently enjoined from infringing Plaintiffs' trademark and the Preliminary Injunction that had been issued previously should now be made permanent.

## IV.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' motion should be granted in its entirety.  Plaintiffs respectfully request that this Court enter its order granting Plaintiffs a default judgment against Defendants, GARY BLAKENEY, an individual doing business as 911 Restoration of Cleveland, OH doing business as Restoration 911 doing business as 911 Restoration of Columbus Ohio; and 911 RESTORATION OF CLEVELAND OH, INC., an Ohio corporation, jointly and severally in the trebled principal amount of $1,565,992.80, plus prejudgment interest of $43,764.12, plus attorney's fees of $15,263.50 and costs of $400.00.  Additionally, the Court should issue an injunction that makes the previous preliminary injunction permanent and grant such other and further relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  August 5, 2015

LEBEDEV, MICHAEL & HELMI
By:    /s/ Gennady L. Lebedev     .
Gennady L. Lebedev
Attorneys for Plaintiff
911 RESTROATION
FRANCHISE, INC.

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**